IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Richard L. Coleman,<br><br>        Plaintiff,<br><br>v.<br><br>Robert M. Stevenson, III, Warden;<br>Keisha Taylor, Inmate Grievance Coordinator;<br>Jannice Montgomery, Inmate Grievance Coordinator,<br><br>        Defendants. | C/A No. 0:09-872-HMH-PJG<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff, Richard L. Coleman ("Coleman"), a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983 against the defendants, who are all employees of the South Carolina Department of Corrections ("SCDC"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (Docket Entry 32.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Coleman was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (Docket Entry 33.) Coleman filed a response. (Docket Entry 35.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

**BACKGROUND**

Coleman alleges that while he was housed in disciplinary detention at Broad River Correctional Institution ("Broad River"), the defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by intentionally denying him dental treatment for

approximately five months, which caused him unnecessary pain.[1] Essentially, Coleman alleges—and the defendants do not appear to dispute—that Coleman first submitted a request for dental treatment on November 12, 2007, after which he was notified that an appointment would be scheduled. After submitting a second request on December 2, 2007, Coleman was informed on December 10, 2007 that an appointment had been scheduled and that a security officer would notify him of the date and time. On January 9, 2008, in response to a request to staff inquiring into the status of his dental appointment, Coleman was informed that an appointment had been scheduled for December 14, 2007, but that it had been cancelled by security. He was also informed that his appointment would be rescheduled.

On January 17, 2008, Coleman filed a request to staff as well as a Step 1 grievance alleging that he was being denied dental treatment, that he was never informed of his prior appointment, that security canceled the appointment without informing him, and that his tooth was worsening and now bleeding. On January 18, 2008, Coleman was notified that another appointment had been scheduled. On January 29, 2008, Coleman filed a Step 1 grievance that he indicated was an "emergency grievance" alleging that he was being denied dental care, causing him to suffer from pain and tooth decay. On February 6, 2008, Defendant Montgomery returned this grievance unprocessed as duplicative to the grievance filed twelve days earlier. On February 15, 2008 Coleman submitted a request to staff arguing that his January 29 grievance was an emergency and not duplicative. Defendant Taylor responded that Coleman's grievance would be answered concerning his complaints; however, Defendant Taylor indicated that the grievances were duplicative and therefore,

---

[1] To the extent that the defendants' motion addresses other claims which they conjecture that Coleman may be attempting to assert, the court finds that such claims do not meet the applicable pleading standard and are not properly before the court. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

Coleman's concerns would be addressed in response to his first grievance. On February 19, 2008, in response to an inquiry by Coleman concerning the status of his dental appointment, Coleman was informed that another appointment had been scheduled but was canceled by the warden's office and that it would be rescheduled. On February 26, 2008, Coleman submitted a request to staff alleging that he was being denied dental care and that the grievance coordinators were violating SCDC policy. On Febraury 29, 2008, Defendant Stevenson denied Coleman's pending Step 1 grievance. Due to Coleman's transfer to McCormick Correctional Institution ("McCormick"), Coleman did not receive notification of this decision until May 14, 2008.

Following Coleman's transfer to McCormick, he received dental care on March 10, 2008, at which point it was determined that Coleman's dental filling had fallen out. On March 18, 2008, Coleman received additional dental care and his filling was replaced.

In support of their motion for summary judgment on this claim, the defendants have submitted the affidavits of Beth Wallace, the dental assistant to Dr. James Moore at Broad River; Defendant Montgomery; Defendant Stevenson; Defendant Taylor; Sharonda Sutton, a correctional officer at Broad River; and Dr. James Moore, a board certified dentist that provides dental services at Broad River. The defendants have also submitted Coleman's medical file. Essentially, the affidavits indicate that inmates in the special management unit ("SMU"), such as Coleman, must be transported to the medical ward, requiring a van and two security personnel due to safety concerns. (See Wallace Aff. ¶ 4, Docket Entry 32-2; Stevenson Aff. ¶¶ 4-6, Docket Entry 32-4; Moore Aff. ¶ 5, Docket Entry 32-11.) Because this requirement limits the number of SMU inmates that can be cared for at a time and because inmates generally have poor dental hygiene, there is a long waiting list of inmates with dental requests. (Stevenson Aff. ¶ 7, Docket Entry 32-4; Moore Aff. ¶¶ 6-7, Docket Entry 32-11.) Therefore, the dental office maintains a priority list for SMU inmates, with emergency

appointments receiving priority over regular appointments. (Moore Aff. ¶ 6, Docket Entry 32-11.) Dr. Moore attests that "it is not uncommon for an inmate in [SMU] who does not have a serious or emergency need to wait six months or more to be seen." (Id. ¶ 7.) Moore and Wallace aver that serious or emergency needs arise when an inmate presents swelling, infection, excessive bleeding, or other evidence of trauma in or around his teeth. (See id. ¶ 8; Wallace Aff. ¶ 6, Docket Entry 32-2.) Further, they attest that the SMU nurses are aware of these factors and have been instructed that if a serious situation arises the SMU nurses should call Wallace or Moore to make arrangements for the inmate to be seen as soon as possible. (See Moore Aff. ¶¶ 9-10, Docket Entry 32-11; Wallace Aff. ¶ 7, Docket Entry 32-2; see also Stevenson Aff. ¶ 9, Docket Entry 32-4.) Neither Wallace nor Moore recalls being notified by the nurses that Coleman had a serious or emergency dental need. (Wallace ¶ 8, Docket Entry 32-2; Moore Aff. ¶ 11, Docket Entry 32-11.) Finally, having reviewed Coleman's medical records, Moore attests that an inmate who requires only a filling does not present a serious or emergency dental need. (Moore Aff. ¶ 15, Docket Entry 32-11.)

With regard to the cancellation of Coleman's appointments, the affidavits reveal that regular sick call appointments can be cancelled at any time for security reasons. (Stevenson Aff. ¶ 13, Docket Entry 32-4; Moore Aff. ¶¶ 12-13, Docket Entry 32-11.) The defendants contend that if Coleman's condition had been serious, arrangements would have been made for him to be seen by dental personnel.

With regard to the processing of Coleman's second grievance, Defendant Taylor attests that emergency grievances must be processed within seven days pursuant to prison policy. These are grievances that "demonstrate that the inmate is in a substantial risk of harm or personal injury," such as a threat of violence against an inmate or a life-threatening situation. (Taylor Aff. ¶¶ 10, 12,

Docket Entry 32-5.) Taylor avers that Coleman's allegations concerning a lost filling do not state sufficient grounds to constitute an emergency. (Id. ¶¶ 11-12.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the

pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Deliberate Indifference**

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To establish a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his

*PJG*

choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

**C.     Discussion**

Coleman's Eighth Amendment claim fails for several reasons. First, Coleman has failed to identify any personal involvement by the named defendants with regard to his Eighth Amendment claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Mere knowledge is not sufficient to establish personal participation. Id. The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the

majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).[2]

Here, the only personal involvement by the defendants that Coleman alleges with regard to his medical claim relates to their handling of his grievances regarding his request for immediate dental treatment.[3] For example, he essentially alleges that Defendants Taylor and Montgomery did not properly process his second Step 1 grievance, which Coleman indicated was a emergency grievance, in accordance with SCDC policy. Instead, this grievance was returned unprocessed by Defendant Montgomery as duplicative to the grievance he filed twelve days earlier. Defendant Taylor rejected Coleman's challenge of this determination. Coleman argues that his grievance was not responded to promptly and he ultimately was not satisfied with Defendant Stevenson's response. Without more, allegations of a failure to investigate an issue, a failure to process a grievance, or a denial of a grievance are insufficient to establish personal involvement by a defendant in the deprivation alleged. See Nunn v. Busse, No. 3:10-CV-008 WL, 2010 WL 1710449, *6 (N.D. Ind. Apr. 26, 2010) (unpublished) (" 'Only persons who cause or participate in the [Constitutional] violations are responsible' " for those violations, failure to investigate or ruling against a prisoner's

---

[2] The court notes that even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisory liable for constitutional injuries inflicted by their subordinates).

[3] To the extent that Coleman attempts to assert a separate claim based on the defendants' alleged failure to properly process his grievance or timely respond to his grievances, this fails to rise to the level of a constitutional violation under the facts of this case. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure); Shabazz v. Maynard, No. 0:02-1208-10BD, 2002 WL 32332072 (D.S.C. Nov. 25, 2002) (unpublished) (indicating that "a violation of the SCDC's grievance policy is not a violation of any federal right"). To the extent that Coleman argues that the defendants' alleged failure to address his grievances immediately demonstrates their deliberate indifference to his dental needs, that argument is addressed below.

grievance 'does not cause or contribute to the violation.' ") (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)); George v. Pennsylvania Dep't of Corr., C/A No. 3:CV-09-1202, 2010 WL 936778, *4 (M.D. Pa. Mar. 11, 2010) (unpublished) ("Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate," as this is insufficient to demonstrate personal involvement) (internal quotation marks and citation omitted); Davis v. Chapple, No. 07-cv-321 (GTS/DRH), 2009 WL 6312502, *7 (N.D.N.Y. Nov. 4, 2009) (unpublished) (stating that "failing to receive a response to a complaint is insufficient to establish personal involvement especially when there is no other showing that defendant knew of or directly participated in any alleged violation") (internal quotation marks and citations omitted).

Further, the defendants are non-medical prison personnel. To establish a claim for denial of medical care against non-medical personnel, Coleman must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

As stated above, the evidence reveals that the SMU nurses are trained as to what circumstances constitute an emergency dental need. Further, Dr. Moore reviewed Coleman's medical records and indicated that Coleman's tooth which ultimately required a filling was not an emergency or a serious medical need. This supports Defendant Taylor's averment that a damaged tooth does not require priority review as an emergency grievance and Defendant Stevenson's

ultimate denial of Coleman's grievance. Accordingly, Coleman cannot show that these defendants were deliberately indifferent to any serious medical need.

Moreover, even if Coleman could show personal involvement by the defendants, Coleman's claims regarding an five-month delay (from November 2007 until March 2008) in receiving medical treatment fail to meet the deliberate indifference standard, especially in light of the fact there is no indication that the defendants were even made aware of his dental request until at the earliest January 17, 2008 when he filed his first grievance. Although Coleman argues that he suffered unnecessary pain and appears to disagree with the defendants' assessment of the seriousness of his condition, he has not presented admissible evidence from which a reasonable jury could find that his injured tooth presented a serious medical need. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."). Moreover, Coleman cannot demonstrate that the defendants' actions in denying his grievance or declining to process his grievance as an "emergency" grievance rise to the level of deliberate indifference to a serious risk of harm. Coleman has therefore failed to show that the deprivation was sufficiently serious such that it resulted in the denial of the minimal civilized measure of life's necessities or that the defendants

actually knew of a substantial risk to Coleman and disregarded that substantial risk.  See Farmer, 511 U.S. at 847.

Additionally, the defendants are entitled to qualified immunity.  Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").  To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct.  Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009).  Because Coleman has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

## RECOMMENDATION

For all of the foregoing reasons, the court recommends that the defendants' motion for summary judgment (Docket Entry 32) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 22, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).